UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA        CASE NO: 00-6108 CR-DIMITROULEAS

vs.

TONY ISSA,
a/k/a/ Salim Matta
_____/

### DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION

**COMES NOW,** the Defendant, Tony Issa, by and through undersigned counsel, and files his objections to the PSI submitted in this case. The Defendant notes the following objections to the PSI:

1.  Paragraphs 17, 18 and 24 of the PSI conclude that the Defendant is responsible for the loss of $975,000 from First Union National Bank. This amount is based solely on the face amount of the check tendered to the bank by Robert Issa, the co-defendant. The PSI then enhances the Defendant's base offense level 11 points pursuant to Section 2F1.1 (B)(1)(L) since the amount of loss was more than $800,000.

This calculation by the probation office is incorrect and ignores the evidence presented at the trial of this matter. The trial demonstrated clearly that the goal of this conspiracy was, at most, obtaining $275,000 in cash along with $50,000 in travelers checks. It was uncontradicted at trial that Robert Issa cultivated the trust of the bank employees and engineered



this scenario in order to "score" a large lump sum of cash. There is no credible evidence whatsoever that either Robert or Tony ever expected to obtain more cash from this fraudulent deposit. This was obviously a one shot deal. Neither man could reasonably expect the bank not to discover that the check was no good. Indeed, the government's theory at trial was that Robert Issa actively distracted the teller so that she would not notice that the check was drawn from Republic Security Bank. This distraction was crucial to the success of the enterprise because First Union had insisted that the negotiated check be drawn from another First Union account. Likewise, the government's theory was that Tony Issa was present for the sole purpose of absconding with the loot before the bank discovered the fraud. Assuming the government's theory is accurate, and Tony was present to hustle the money away before the fraud was discovered, then neither man obviously expected the fraud to remain undetected for long.

Assistant United States Attorney Steve Petrie has indicated that he believes the amount of loss is $370,000, resulting in a nine level enhancement. Mr. Petrie recalls testimony that Robert requested $50,000 in travelers checks and $50,000 in cashiers checks.

Undersigned counsel recalls the $50,000.00 in travelers checks, but does not recall $50,000.00 in cashier's checks. A

review of trial notes was not helpful in determining the correct amount.

If Mr. Petrie's memory in accurate, the Defendant should receive a nine level enhancement. If defense counsel's notoriously unreliable memory is accurate, the Defendant should receive an eight level enhancement under §2F1.1(b)(1). What is certain is that Defendant should not receive the 11 level enhancement suggested by the PSI.

2. Paragraphs 18 and 26 of the PSI conclude that there should be no adjustment for the Defendant's role in the offense pursuant to Section 3B1.2. The Defendant respectfully suggests that this conclusion ignores both the law of this circuit and the facts of this case.

In <u>United States v. De Varone</u>, 175 F.3d 930 (11th Cir. 1999) the Eleventh Circuit, in an en banc opinion, described the principles trial courts are to follow in deciding role adjustments under Section 3(b)(1.2).

> "First and foremost, the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. Section 1(b)(1.3)…Second, where the record evidence is sufficient, the District Court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant.... These principles advance both the directives of the guidelines and our case precedent by recognizing the fact intensive nature of this inquiry and by maximizing the discretion of the trial court in determining the defendant's role

3

in the offense." De Varone at 934.

In other words, a trial court is to determine

> "First, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." Id. at 940.
>
> The first step in this analysis requires the District Court to "asses whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating her base offense level." Id. at 941.

Here, the Defendant has been convicted of conspiring with Robert Issa to commit bank fraud and one substantive count of bank fraud. The testimony developed at trial established beyond any argument that Robert Issa was the driving force behind this offense. The uncontradicted testimony of all of the bank employees was that Robert Issa set in motion the chain of events which culminated in the successful perpetration of the fraud. Robert opened the account at the bank. Robert dealt with the employees of the bank. Robert was the only signatory on the accounts at the bank. Robert made the material misrepresentations. Robert specified the amount of cash to be delivered in the transaction. Robert scheduled the transaction. Both bank employees who testified at trial stated under oath that they had never heard of, or seen Tony Issa prior to the evening of the transaction. They also both testified that nothing Tony Issa did or said during the transaction affected

4

their decision to release the money to Robert.  They testified that Tony's presence, and conduct, had no bearing on their decision to complete the transaction.

> "One main purpose of the guidelines is to punish similarly situated defendant's in a like-minded way. However, given the relatively broad definition of relevant conduct under section 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts.  The conspiracy conviction is the classic example of this phenomenon. In such cases, the defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in the conspiracy was relatively minor.  Under these circumstances, the District Court may adjust the defendant's sentence for her mitigating role in this broad criminal conspiracy.  This adjustment allows a District Court to impose a sentence that more closely mirrors the defendant's actual conduct, furthering the Guidelines' goal of imposing comparable sentences for similar acts.  However, such adjustment only makes sense analytically if the defendant can establish that her role was minor compared to the relevant conduct attributed to her." De Varon at 941.

Clearly, the trial testimony established that Tony Issa's role was minor compared to the relevant conduct attributed to him. Tony Issa did nothing to induce the fraud.  He simply carried the loot away. He had no involvement in the months of cultivation that went into setting this event up.

> "The second principle we derive from the text of the Guidelines is that the district Court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." Id. at 945.

Again, under this analysis, Tony Issa deserves a downward adjustment.  He was a bit player in this offense.  Robert was

5

the star. As demonstrated at trial, there is no evidence that Tony Issa had any involvement in this fraud until the day he walked into the bank with Robert. Given his role in this offense, Tony was a fungible cast member. Robert Issa could have used almost anyone physically capable of carrying the briefcase out of the bank. Tony got the part no doubt because of his willingness to participate—but his culpability is much less than Robert's.

The proponent of a downward departure bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. De Varone at 940. The evidence presented at trial meets that standard as to Tony Issa. Whether considered as to relevant conduct or vis a vis the co-defendant, Tony Issa deserves an adjustment for minor role in the offense.

**CONCLUSION**

The Defendant's adjusted offense level could properly range from 12 (eight level enhancement for amount of loss; four point reduction for minimal role) to 15 (nine level enhancement for amount of loss; two point reduction for minor role). It is respectfully suggested that a sentence of 15 months falls within three of the four levels in that range. A 15 month sentence would accurately reflect the concerns of the Sentencing Guidelines, provide adequate punishment for the Defendant, and be a fair

resolution of the issues before the Court.

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to Steven Petri, Esquire, Assistant United States Attorney, 500 Australian Avenue, Suite 400, West Palm Beach, Florida 33401 and to Dedra Pratt, United States Probation Officer, 299 East Broward Boulevard, Room 409, Ft. Lauderdale, Florida 33301-1168 by U.S. Mail on this /0 H day of August, 2000.

**DONNIE MURRELL, ESQUIRE**
**FLORIDA BAR NO: 326641**
400 Executive Center Drive
Suite 201--Executive Center Plaza
West Palm Beach, Fl. 33401
(561) 686-2700

7